UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JASON HATCHER<br>BRYAN VALDEZ-ESPINOSA,<br>Defendants. | Cr. No. _____1:21CR71WES-PAS_____<br><br>Violations:<br><br>18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)<br>18 U.S.C. § 1028A (Aggravated Identity Theft)<br>18 U.S.C. § 2 (Aid and Abet) |

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE

(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

Introduction

At all times relevant to this Indictment:

1. JASON HATCHER (HATCHER) resided in the State of New York.

2. BRYAN VALDEZ-ESPINOSA (VALDEZ) resided in the State of New Jersey.

The Conspiracy

3. Beginning on a date unknown to the Grand Jury but not later than on or about June 8, 2021 and continuing through on or about June 11, 2021, in the Districts of Rhode Island and elsewhere, the defendants,

JASON HATCHER
and
BRYAN VALDEZ-ESPIONOSA,

did knowingly, willfully, and unlawfully combine, conspire, and agree with each other and other persons, known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly and with intent to defraud, devise and intend to devise a scheme to defraud and to obtain money from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing such scheme to defraud and to obtain money, caused the transmission of wire communications in interstate and foreign commerce, in violation of 18 U.S.C. § 1343.

## The Object of the Conspiracy

4. The object of the conspiracy was for the defendants, HATCHER and VALDEZ, and their co-conspirators, to unlawfully enrich themselves by obtaining money from elderly victims, by convincing the victims that a grandchild, child, or other relative was in financial and legal distress; that money was urgently needed to pay expenses relating to the relative's legal issues; and that cash should be given to a courier who would be sent to the homes of the victims, sent to an address in Florida via commercial carrier, wired to the Dominican Republic via money remitters or provided to the conspirators via the phone by providing the codes of retail gift cards purchased by the victim at the direction of conspirators.

## Manner and Means of the Conspiracy

5. Members of the conspiracy contacted elderly victims throughout Rhode

2

Island, by telephone, and, posing as a relative, a lawyer, or other individual, falsely told the victim that a relative, typically the victim's grandchild or child, had been arrested or incarcerated in connection with a car accident, and that the relative needed money for bail and legal fees, often thousands of dollars.

6. It was further part of the conspiracy and scheme to defraud and to obtain money that members of the conspiracy sometimes posed, on the telephone, as a victim's grandchild, child, or other relative, exploiting the familiar relationship and to further persuade and induce the victim to provide the cash.

7. It was further part of the conspiracy and scheme to defraud and to obtain money that, in order to conceal the crime and prevent a victim from sharing information about the calls and requests for money, members of the conspiracy falsely told victims that a "gag order" was in place on his or her relative's legal matter that prohibited the victim from sharing information about the matter.

8. It was further part of the conspiracy scheme to defraud and to obtain money that, during the telephone calls, members of the conspiracy informed the victims that a courier or bail bondsman would arrive at their homes to pick up the cash for their relative.

9. It was further part of the conspiracy that HATCHER and VALDEZ retrieved and attempted to retrieve packages of cash from elderly victims at their homes.

## Acts in Furtherance of the Conspiracy

10. In furtherance of the conspiracy, at least one of the following acts, among

others, was committed by one or more of the co-conspirators in the District of Rhode Island:

11.  On or about June 9, 2021, a member of the conspiracy called Allan T., of Hopkinton, Rhode Island, and told Allan T. that his granddaughter was in police custody and that bail in the amount of $9,500 had been set in the case. Later that day, HATCHER traveled to Hopkinton, Rhode Island, and attempted to retrieve $9,500 in cash from Allan T.

12.  On or about June 9, 2021, a member of the conspiracy called William H. of Johnston, Rhode Island, falsely representing themselves to be William H's granddaughter who claimed to have been arrested for her involvement in a motor vehicle accident. The conspirator directed William H. to call her attorney Raymond Allen, the same attorney name used in the Hopkinton attempt. On that same day a conspirator arrived at William H.'s house and retrieved an envelope from William H. containing $9,500 in cash. Thereafter the attorney notified William H. that the charges against his granddaughter had been elevated and the Court required an additional $13,700. Later, the same coconspirator arrived at William H.'s home and retrieved an envelope containing $13,700 in cash. Thereafter, the attorney advised William H. that the party injured in the motor vehicle accident involving his granddaughter was willing to "settle" and instructed William H. to use certain money remitter services to wire funds from the United States of America to the Dominican Republic.

13.  On or about June 12, 2021, as part of the scheme and as directed by a conspirator, William H., wired $950 through the Western Union Company from

Johnston, Rhode Island, to "Rafael N." in the Dominican Republic. From June 12, 2021 to June 18, 2021, using various commercial money remitting services including Western Union and Moneygram, William H. at the direction of a member of the conspiracy, sent six wire transfers from Rhode Island to Rafael N. in the Dominican Republic totaling $5,400.

14.     On or about June 10, 2021, a member of the conspiracy called Carmine B., of Cranston, Rhode Island, and falsely identified himself as an attorney representing Carmine B.'s granddaughter who had been arrested and required bail.   Thereafter the conspirator sent an electronic message to HATCHER that included Carmine's name and Cranston address along with the amount of momey he was to retrieve from him.

15.     On or about June 11, 2021, a member of the conspiracy posing as a grandson, called Jacqueline K. of Smithfield, Rhode Island and told Jacqueline K. that he had been in a car accident and critically injured a girl. He directed Jacqueline to speak to his attorney, Ray Allen, the same attorney name from both the Hopkinton and Johnston incidents.   Thereafter Jacqueline K. spoke to a conspirator posing as an attorney who directed her to obtain $9,050 in cash to post bail.   Jacqueline K. withdrew money from the bank and thereafter provided it to a conspirator posing as a courier. Thereafter Jacqueline K. was contacted by the "attorney" from the same Canadian telephone number he originally used and advised her that additional funds in the amount of $13,700 were required.   Jacqueline K. obtained the cash and provided it to a conspirator posing as a courier.

16. On or about June 11, 2021, a member of the conspiracy called Gladys T., of Coventry, Rhode Island, falsely identified himself as an attorney representing her grandson who had been involved in a motor vehicle accident and had been arrested. The conspirator advised Gladys T. her grandson required $12,000 in cash bail and that he would send a bail courier to her house to collect the cash. Thereafter a conspirator arrived at Gladys T's home and retrieved the envelope containing $12,000 in cash.

17. On or about June 11, 2021, a member of the conspiracy, called Theresa K., of Cumberland, Rhode Island and, falsely identified himself as an attorney, Walter Bennet, and claimed he represented a relative, who had been arrested as a result of a motor vehicle accident he had been involved in. The conspirator, posing as Attorney Walter Bennet, informed Theresa K. that the court had imposed a gag order and she was not to mention her relative's arrest to anyone. The conspirator told Theresa K. that the relative required $18,800 in cash. Thereafter, HATCHER drove to Cumberland, Rhode Island and retrieved the $18,800 cash from Theresa K.

18. On or about June 11, 2021, a member of the conspiracy called Sandra H. posing as her grandson. The conspirator claimed to have been involved in a motor vehicle accident while reaching for his cell phone and had been charged. The conspirator then told Sandra H. she would need to speak with his attorney, Michael Bateman. The conspirator, posing as Attorney Batemen, instructed Sandra H. her grandson would require $15,500 in cash bail and he would send a courier to retrieve the cash. A member of the conspiracy traveled to Warwick, Rhode Island and retrieved $15,500 in cash from Sandra H. Thereafter, a conspirator posing as the attorney once

again called Sandra H.. He falsely represented that additional funds were required and then instructed Sandra H. to send $20,100 via commercial carrier to an address in Florida. The same attorney called Sandra H. once again and instructed her to send $40,000 cash to the same Florida address via commercial carrier. After having sent that parcel of cash, Sandra H. was again contacted by the conspirator who instructed her to send another parcel this time containing $24,225 in cash. The conspirator posing as Attorney Bateman instructed Sandra H. that the Court had imposed a gag order and she should tell no one about the case.

19. On or about June 11, 2021, a member of the conspiracy called Mary S., of Cranston, Rhode Island and falsely claimed to be her granddaughter. The caller said that she had been involved in a motor vehicle accident resulting in her arrest. The "granddaughter" then handed the phone over to her attorney who advised her that he required $12,000 cash bail. Thereafter, HATCHER traveled to Cranston, Rhode Island and retrieved the package containing $12,000 in cash from Mary S.

20. On or about June 11, 2021, a member of the conspiracy placed a telephone call to Mary M. of Cranston, Rhode Island and posing as an attorney advised her that her granddaughter had been involved in a motor vehicle accident resulting in criminal charges. The caller advised that her granddaughter would require $10,000 cash bail. Mary M. travelled to her bank and withdrew $10,000 in cash. Thereafter, VALDEZ traveled to Cranston, Rhode Island to retrieve the package of cash.

21. On June 11, 2021, a member of the conspiracy placed a telephone call to Elaine M., of Warwick, Rhode Island and posing as her grandson, David, told Elaine M.

7

that her grandson had been involved in a motor vehicle accident while using his cell phone and had been arrested. The conspirator, posing as David, told Elaine M. that he was represented by an attorney, Michael Bateman. "Attorney Bateman" told Elaine M. that her grandson required $6000 in cash for bail. Thereafter, a member of the conspiracy sent HATCHER a text message that provided Elaine M.'s address, amount of cash and the notation "green light." HATCHER then traveled to Warwick, Rhode Island to retrieve the cash from Elaine M.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO

(Aggravated Identity Theft - 18 U.S.C. §§ 1028A, 2)

22.  The allegations contained in paragraphs 1 through 20 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

23.  On or about June 11, 2021, in the Districts of Rhode Island and elsewhere, defendant,

### JASON HATCHER

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, Elaine M.'s grandson, David, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, knowing that the means of identification belonged to another actual person.

All in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

8

## FORFEITURE ALLEGATION

Upon conviction of the conspiracy to commit wire fraud offense alleged in Count 1 of this Indictment, defendants

**JASON HATCHER**
and
**BRYAN VALDEZ-ESPINOSA,**

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1349 and 1343, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses, including but not limited to, the following.

- an Apple iPhone, color white in clear case obtained from VALDEZ on June 11, 2021;

- an Apple iPhone color red obtained from HATCHER on or about June 11, 2021;

- an Apple iPhone color red in a Moschino brand case seized from HATCHER on June 11, 2021;

- a Motorola Moto G Plan cell phone assigned mobile phone number (239) 667-3999 obtained from HATCHER on or about June 11, 2021.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been

commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1), as incorporated by 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL:

███████████████

Grand Jury Foreperson

RICHARD B. MYRUS
Acting United States Attorney

*[signature]*

_____
WILLIAM J. FERLAND
Assistant U.S. Attorney

*[signature]*

_____
SANDRA HEBERT
Assistant U.S. Attorney
Chief, Criminal Division

Dated: July 9, 2021